UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELIA ARMENTA, | ) | Case No. CV 10-162-OP |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 14.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly evaluated Plaintiff's Residual Functional Capacity ("RFC");
2. Whether the ALJ posed a proper hypothetical question to the vocational expert ("VE");
3. Whether the ALJ properly resolve any possible conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT");
4. Whether the ALJ properly considered whether Plaintiff's impairments met or equaled a listed impairment;
5. Whether the ALJ properly considered the opinions of Plaintiff's treating physician; and
6. Whether the ALJ properly considered Plaintiff's credibility.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at

401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

### A. The ALJ's Decision.

The ALJ found that Plaintiff has the severe impairments of history of left kidney cancer, status post nephrectomy; degenerative osteoarthritis of the bilateral knees, status post surgical repair; status post right carpal tunnel release; status post right shoulder surgery; and morbid obesity. (AR at 14.)

The ALJ found Plaintiff had the RFC to perform sedentary work, "except no continuous/strenuous dominant right hand manipulation (clarified to mean power gripping/grasping) and therefore, manual dexterity can be performed for light activity (i.e., not requiring power gripping/grasping); and, no reaching at or above shoulder level on the right." (Id.)

Relying on the testimony of the VE to determine the extent to which Plaintiff's limitations eroded the occupational base of unskilled sedentary work, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Id. at 17.) Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of such work as telephone order clerk (DOT No. 209.567-014), and charge account clerk (DOT No. 205.367-014). (AR at 17-18.)

///
///
///

B.   **The ALJ Failed to Properly Consider the Opinions of Plaintiff's Treating Physicians.**

A July 31, 2008, Medical Source Statement by an unidentifiable treating source[3] concluded, as interpreted by the ALJ, that Plaintiff could not perform even sedentary work activities due to degenerative osteoarthritis of multiple sites. (AR at 330-31.) In her decision, the ALJ explained that she credited the opinions of the consultative examiner and State agency physician over that of "the treating physician," as articulated in the July 31, 2008, Medical Source Statement. (Id. at 16.) The ALJ offered the following discussion concerning the treating physician's opinions:

> As for the opinion evidence, the undersigned credits the consultative examiner and the State agency [physician] over the treating physician based on supportability with medical signs and laboratory findings; consistency with the record; and area of specialization. The medical source statement (MSS) from this treating physician appears to be based primarily on the subjective statements of the claimant. The underlying documentation from the treating source provided in the record reveals little, if any, objective

---

[3] The Court notes that although it is unable to read the name of the physician who completed the Medical Source Statement, it is clearly not the signature of Elana Harway, M.D. or Thor Gjerdrum, M.D., Plaintiff's treating orthopaedists, Uzma Chaudhry, M.D., Plaintiff's primary care physician, Carolyn Griffith, M.D., Plaintiff's treating gynecologist, P.J. Benipal, M.D., Plaintiff's treating gastroenterologist, or Craig Canfield, M.D., Plaintiff's treating Urologist. In the Joint Stipulation, Plaintiff identifies this doctor as "Dr. Santein, who was plaintiff's most recent treating physician at Santa Barbara County Public Health Department." (JS at 32.) However, the physician's identity is not readily apparent from the record. As a result, the physician's identity clearly was not known to the ALJ at the time she authored her opinion. (AR at 16.)

>observation of signs or symptoms or administration of an appropriate diagnostic examination along with a description of results. Such lack of documentation fails to support the limitations provided in the MSS.

(Id. at 16 (citations omitted).)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as appears to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

First, the ALJ's reliance on this single document by an unidentified physician as the paramount "treating physician" opinion is inexplicable.

Although the form states that it is "For Treating Physician To Complete," and the signature of the author appears three other times in the record (AR at 334, 336, 340), as explained in footnote 3 above, the author clearly is not one of the physicians who had been regularly treating Plaintiff at the time of the ALJ's opinion. As for the extensive medical evidence originating from Plaintiff's long list of treating physicians, the ALJ was silent. Surely, the ALJ cannot disregard the plethora of treatment notes from other treating sources by dismissing a single document from an unknown physician. See Thomas, 278 F.3d at 957 (ALJ can reject treating source opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

Moreover, the ALJ's reasons for rejecting the Medical Source Statement are not legitimate. Although stated in several different ways, the ALJ rejected the Medical Source Statement first and foremost because it relied on Plaintiff's subjective complaints rather than "medical signs and laboratory findings" and the rest of the medical record. However, as discussed below, the Court finds that the ALJ improperly rejected Plaintiff's credibility. Although an ALJ may properly reject the findings of a treating physician premised largely on the subjective complaints of the Plaintiff when those complaints have been "properly discounted" by the ALJ, that was not the case here. Morgan v. Comm'r of Soc. Sec. Admin, 169 F.3d 595, 602 (9th Cir. 1999); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

In addition, the ALJ concluded that the physician's opinions were not consistent with the record. (AR at 16.) However, the record is replete with medical evidence documenting Plaintiff's impairments. Specifically, with respect to Plaintiff's orthopedic impairments, the record shows extensive treatment, multiple surgeries, continued use of narcotic pain medication, unsuccessful steroid injections, and ultimately, a potential recommendation for

joint replacement surgery. (Id. at 190, 195-96, 199, 201, 211, 321, 323, 328-29, 348, 380, 389, 391, 440, 445, 447-51.)

Finally, the ALJ rejected this "treating physician" opinion due to "area of, specialization." (Id. at 16.) Presumably, the ALJ was relying on the fact that consultative examiner Jonathan Gurdin, M.D., is an orthopaedic specialist. (Id. at 16, 279-81.) However, without being able to identify the physician who completed the Medical Source Statement, it would have been impossible for the ALJ to determine whether or not that physician had equivalent expertise to that of the consultative physician.

The ALJ's failure to provide legally sufficient reasons for discounting the Medical Source Statement, and more importantly, her total failure to address any of the findings of Plaintiff's numerous identifiable treating sources warrants remand. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, No. C 00-2986 MMC, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (alteration in original) (citation omitted).

Based on the foregoing, the Court finds that remand is appropriate for the ALJ to set forth legally sufficient reasons for rejecting the opinions of Plaintiff's treating physicians, if the ALJ again determines that such a rejection is warranted.[4]

///

---

[4] The Court expresses no view on the merits.

7

**C.      The ALJ Failed to Properly Consider the Plaintiff's Credibility.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d

at 1284. The Social Security Rulings ("SSR") further provide that an individual may be less credible for failing to follow prescribed treatment without cause. SSR 96-7p.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (AR at 15.) The ALJ relied on three factors in rejecting Plaintiff's credibility: (1) in the last three years, treating physicians have recommended only limited and conservative treatment; (2) Plaintiff was noted to be noncompliant with her dietary recommendations without good reason; and (3) Plaintiff's allegations of impairment are not fully supported by the objective medical evidence. (Id.)

First, the ALJ's conclusion that within the three years prior to her decision, Plaintiff's treating physicians have responded to her alleged impairments with limited and conservative treatment is not a convincing reason for discounting Plaintiff's credibility. Despite not having health insurance and having to rely on public benefits, Plaintiff has received extensive treatment for her impairments. Prior to the three-year period cited by the ALJ, Plaintiff had undergone three knee surgeries. (Id. at 190, 195-96, 199, 201, 211.) Moreover, within the three-year period cited by the ALJ, Plaintiff underwent right-shoulder surgery and right-hand carpal tunnel release. (Id. at 449-51.) During this same three-year period, Plaintiff was also routinely prescribed Vicodin for her pain. (Id. at 321, 323, 329, 348, 380, 389, 391.) In addition, Plaintiff received multiple steroid injections for her shoulder and knee pain, and was referred for physical therapy. (Id. at 196, 328-29, 440, 447-48.)

On September 13, 2006, Plaintiff's treating orthopedist, Thor C. Gjerdrum, M.D., noted that steroid injections had been unsuccessful in treating

Plaintiff's knee pain and recommended that she receive Synvisc or hyaluronic acid injections. (Id. at 195.) At that time, Dr. Gjerdrum stated that "[t]he alternative of a total knee are tibial osteotomies and this is somewhat drastic for a person as young as she is in her forties." (Id.) In an April 10, 2007, report, consultative orthopedist, Jonathan M. Gurdin, M.D., referred to Dr. Gjerdrum's recommendation regarding the Synvisc injections. Dr. Gurdin noted that "[t]he injections were going to be done, but [Plaintiff] was found to have a left renal carcinoma and underwent a nephrectomy in February of [2007]." (Id. at 279.)

This evidence contradicts the ALJ's conclusion that Plaintiff had received limited and conservative treatment in the three years preceding the ALJ's decision. To the extent further treatment was not pursued, the lack of treatment was justified by Plaintiff's physician declaring that more invasive treatment was too drastic in light of Plaintiff's age, and that Plaintiff was unable to seek orthopedic treatment while she recovered from renal cancer. Incidentally, less than three months after the ALJ's opinion, Plaintiff's treating orthopedist, who had continuously treated Plaintiff during the three-year period cited by the ALJ, concluded that steroid and Synvisc injections had been unsuccessful in treating Plaintiff's knee pain and concluded that "she may well be a candidate for a joint replacement." (Id. at 445.) The doctor explained that "a debridement of her knee and, more importantly, a diagnostic arthroscopy to determine whether or not she would benefit from a replacement of the medial compartment versus a total knee arthroplasty would be helpful." (Id.)

Next, the ALJ's conclusion that Plaintiff was not compliant with dietary recommendations is not a convincing reason for rejecting Plaintiff's credibility. The ALJ cites two exhibits for her conclusion, 9F/3 and 12F/51. However, these exhibits are copies of the same report, dated June 26, 2007. (Id. at 315, 382.) In that report, Plaintiff's treating physician, Uzma Chaudhry, M.D., noted that Plaintiff "admits she is drinking a lot of soda." (Id. at 315.) Dr.

Chaudhry assessed Plaintiff as suffering from "[b]ilateral lower extremity edema, secondary to dietary noncompliance." (Id.) Dr. Chaudhry recommended that Plaintiff reduce her salt intake, follow guidelines for water intake, and "stay away from soda, etc." (Id.) Although Dr. Chaudhry refers to Plaintiff's consumption of soda as "dietary noncompliance," nowhere in the record of treatment prior to this date does it reflect a recommendation that Plaintiff not drink soda.[5] It was only after Plaintiff had admitted to drinking soda that her doctor advised her to limit soda in her diet. Also of significance is the fact that nowhere in the record following this advisement is there any indication that Plaintiff continued to drink "a lot" of soda in violation of Dr. Chaudhry's dietary recommendations. Thus, there is no evidence that Plaintiff drank soda in conscious disregard of her doctor's dietary recommendations.[6]

The only factor remaining of the three factors relied upon by the ALJ in rejecting Plaintiff's credibility is the ALJ's conclusion that Plaintiff's complaints are not supported by the objective medical evidence. However, an ALJ may not disregard a Plaintiff's testimony solely because it is not

---

[5] Such a recommendation is found in a treatment note from July 9, 2008, over a year after the notation regarding Plaintiff's soda consumption. (AR at 338.)

[6] Notably, Defendant attempts to link Plaintiff's soda consumption with doctor recommendations that she lose weight. (JS at 39-40.) Not only did the ALJ not rely on this factor in her discussion of Plaintiff's dietary noncompliance, but Defendant's argument is not supported by the record. There is no indication that Plaintiff was consuming full-calorie soda, as opposed to diet soda. Because her doctor's concern with Plaintiff's soda consumption was with respect to her salt intake, rather than her weight, consumption of diet soda would have been equally alarming to the doctor. Thus, the doctor's recommendation that Plaintiff stop drinking soda is not proof that Plaintiff was drinking full-calorie soda in noncompliance with recommendations that she attempt to lose weight.

11

1 substantiated affirmatively by objective medical evidence.  Rollins v.
2 Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  Moreover, as previously
3 determined, the ALJ failed to properly consider the medical evidence of record.
4       In the absence of sufficient reasons for rejecting Plaintiff's testimony,
5 the ALJ's credibility determination was error.  Accordingly, the Court finds
6 that remand is appropriate for the ALJ to set forth legally sufficient reasons for
7 rejecting Plaintiff's testimony, if the ALJ again determines that such a rejection
8 is warranted.[7]

**D.    Plaintiff's Remaining Claims.**

      In her four remaining claims, Plaintiff argues that the ALJ failed to properly evaluate her RFC, posed an improper hypothetical question to the VE, failed to resolve a conflict between the VE's testimony and the DOT, and failed to properly consider whether Plaintiff's impairments met or equaled a listed impairment.  Any conclusions as to Plaintiff's RFC, the limitations to be included in a hypothetical question to the VE, the jobs the VE might find Plaintiff capable of performing, and whether Plaintiff's impairments meet or equal a listing, are dependent upon findings relating to Plaintiff's impairments as reflected in her subjective complaints and her treating physicians' opinions.  Accordingly, on remand to reconsider Plaintiff's credibility and the weight of the treating physicians' opinions, the ALJ also shall reconsider Plaintiff's RFC, elicit new VE testimony, and reconsider whether Plaintiff's impairments meet or equal a listed impairment.

**E.    This Case Should Be Remanded for Further Administrative Proceedings.**

      The law is well established that remand for further proceedings is

---

[7] As with the discussion of the treating physicians' opinions, the Court expresses no view on Plaintiff's credibility.

1   appropriate where additional proceedings could remedy defects in the
2   Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.
3   1984). Remand for payment of benefits is appropriate where no useful purpose
4   would be served by further administrative proceedings, Kornock v. Harris, 648
5   F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed,
6   Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand
7   would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d
8   716, 719 (9th Cir. 1985).

9   Here, the Court finds that further administrative proceedings would serve
10  a useful purpose and remedy the administrative defects discussed herein.

## IV.
## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

DATED: November 17, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge